# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### WESTERN DIVISION

**ANGELA WALKER,**                    CASE NO. 3:24 CV 2091

    Plaintiff,

    **v.**

**NICHOLAS DANIELSKI, et al.,**

    Defendants.

---

**ANGELA WALKER,**                    CASE NO. 3:25 CV 36

    Plaintiff,

    v.

**LUCAS COUNTY SHERIFF'S
DEPARTMENT,**

    Defendant.

---

**ANGELA WALKER,**                    CASE NO. 3:25 CV 35

    Plaintiff,

    v.                                   JUDGE JAMES R. KNEPP II

**DON COMES, et al.,**
                                      **MEMORANDUM OPINION AND
    Defendants.                      ORDER**


## INTRODUCTION

Currently pending before the Court are three[1] related cases brought by *pro se* Plaintiff

Angela Walker asserting civil rights claims under 42 U.S.C. § 1983. The Court previously

---

1. These three cases originally consisted of more individual cases, but several were consolidated
in the Lucas County Court of Common Pleas prior to removal to this Court.

consolidated two of these cases (*Walker v. Danielski, et al.*, No. 24 CV 2091 (N.D. Ohio) (claims against individual Lucas County Sheriff Deputies Nicholas Danielski, Hunter Baum, Steven McClellan, and Joseph Navarre) and *Walker v. Lucas County Sheriff's Department*, No. 25 CV 36 (N.D. Ohio)).[2] The third case asserts claims against Toledo Police Department Officer Don Comes, the K-9 Officer with Officer Comes, and the Toledo Police Department. *Walker v. Comes, et al.*, No. 25 CV 35 (N.D. Ohio).[3]

All three cases arise out of a September 3, 2023, traffic stop of a vehicle in which Plaintiff was a passenger.[4] The Complaints all contain similar allegations and attach the same exhibits. All Defendants have moved for dismissal or judgment on the pleadings. Jurisdiction is proper under 28 U.S.C. § 1331. For the reasons discussed below, the Court finds Plaintiff's claims against Baum and Danielski may proceed, but all other claims are dismissed.

## BACKGROUND

For clarity and ease of analysis below, the Court quotes each case's individual complaint separately, and then sets forth the asserted facts common to all three complaints from the attachments thereto.

*Walker v. Danielski, et al.*, No. 24 CV 2091

Plaintiff's Complaints (consolidated in state court) as to the individual Lucas County Sheriff's Office Deputies state, in their entirety:

On Sept[ember] 3, 2023 Sunday around two o'clock Supervisor Danielski, Nicholas, was traveling in the opposite direction than the driver and myself.

---

2. The Court will refer to the Defendants in these two cases collectively as "Lucas County Defendants" or "County Defendants".
3. The Court will refer to the Defendants in this case collectively as "City of Toledo Defendants" or "City Defendants".
4. The driver of the car, Darnell Henson, Sr., also filed a separate suit in the Lucas County Court of Common Pleas; his case was also removed to this Court. *Henson v. Lucas Cnty. Sheriff's Office, et al.*, No. 24 CV 2089 (N.D. Ohio).

Danielski, Nicholas crossed Irwin & Angola @ the stop sign and did a u-turn and stalk us through the community from Oak Bend Place[] back around to where sitting Deputy Baum, Hunter was posted @ Angola & Crissey. At this point Deputy Baum, Hunter turned on his lights and while the driver and I was [sic] stop[ped] at the stop sign @ Angola & Crissey Road in Holland, OH. This violated my 4th & 14th amendment rights that caused PTSD harm in me. He was acting under color of law.

(Doc. 1, at 9) (Complaint against Danielski).

On Sept[ember] 3, 2023 the above deputy [Navarre] violated my 4th and 14th amendment rights which caused PTSD harm in me. Please see attachments.

*Id.* at 41 (Complaint against Navarre).

On Sept[ember] 3, 2023 Sunday around two o'clock the above Deputy [Baum] took over the following of Danielski, Nicholas and Baum, Hunter put his lights on the vehicle after the community following. The driver ask why you pull me over. Baum Hunter said he did a mark lane[.] [T]he driver say ["]come on you know I did not do a mark lane["] Baum, Hunter said[,] ["]I had to fin[d] a reason to pull you over[,] take it to court.["] Baum, Hunter violated my 4th and 14th amendment causing PTSD harm in me[] while acting under the color of law. This Deputy held us detained to Toledo Police & their K-9 officer came.

*Id.* at 68 (Complaint against Baum).

On Sept[ember] 3, 2023 Sunday around two o'clock the above Deputy [McClellan] participate[d] in an illegal stop and search & the Deputy made me sit on his road bar and when I tried to get up d[ue] to pain he . . . made me sit back down on it. This Deputy violated my 14th amendment right that caused PTSD harm in me.

*Id.* at 95 (Complaint against McClellan).

*Walker v. Lucas County Sheriff's Department*, No. 25 CV 36

In Holland, OH around 2:00 p.m. September 3, 2023 Four of Lucas County Deputies did a Tort Act on the Plaintiff while employed with the above department violating the Plaintiff['s] 4th and 14th amendment causing PTSD harm. *See* U.S. District Court Northern District of Ohio Case #: 3:24-CV-02091-JJH and Exhibit A.

(Doc. 1-3, at 2).

3

_Walker v. Comes et al._, No. 25 CV 35

> On Sunday Sept[ember] 3, 2023 around two o'clock Sgt. Comes did an illegal search out of Toledo Police Department jurisdiction. In Holland, OH @ Angola & Crissey Road the illegal stop was detained longer for the Sgt. to bring the Toledo Police K-9 officer to illegal search the vehicle.

(Doc. 1-3, at 2).

Amended Complaint

Following the filing of Defendants' pending motions, Plaintiff subsequently filed, without leave of Court, an identical Amended Complaint in the consolidated case (24 CV 2091 / 24 CV 35) and the related case (24 CV 36). It states:

> On Sept[ember] 3, 2023, around two o'clock in Holland, OH the Plaintiff was riding down Crissey Road, passing a park[ed] deputy @ Crissey and Angola (which was Hunter Baum) passing another deputy as the Plaintiff continue[d] up Crissey Road. The Plaintiff driver turned right off Crissey to Old State Line and right onto Irwin Road. As the Plaintiff and driver now approaching Irwin & Angola Rd. stop sign a deputy is approaching in the opposite direction with the left turn signal on[.] [T]he deputy turned off the left signal and crossed Irwin & Angola[,] U-turned (racial profiling)[,] followed very closely through the community maze from Oak Bend Place back around to the park[ed] deputy Hunter Baum, maneuvered in front of Supervisor Nicholas Danielski[,] putting the emergency lights on the Plaintiff and the driver while they was @ Angola & Crissey Road stop sign. Steven McClellan came [and] made the Plaintiff sit down on his vehicle road bar, Joseph Navarre acted in the unlawful search. Lucas County deputies prolonged the traffic stop for a long period of time to bring a drug sniffing K-9 officer from Toledo Police Department and it[s] handler Sgt. Don Comes to come (Rodriguez v. United States) out Toledo Police jurisdiction to violate the Plaintiff['s] Fourth and Fourteen[th] amendment rights which cause[d] severe PTSD harm.

_Walker v. Danielski, et al._, No. 24-2091 (Doc. 14); _Walker v. Comes, et al._, No. 25-35 (Doc. 10).

Common Factual Allegations

In addition to the above, to each original Complaint, Plaintiff attached a document entitled "Exhibit D: Original Complaint". _See, e.g._, _Walker v. Danielski, et al._, No. 24 CV 2091

4

(Doc. 1, at 19-22). It contains an emailed narrative statement describing the traffic stop at issue. The following facts are taken from that attachment.

Plaintiff was a passenger in a vehicle driven by Darnell Henson, Sr. in Holland, Ohio, around 2:00 p.m. on Sunday, September 3, 2023. *Id.* at 19. Plaintiff and Henson noticed a Deputy Sheriff[5] (Baum) parked at the intersection of Crissey Road and Angola Road as they drove by. *Id.* As they continued driving, they observed another Lucas County Deputy Sheriff[6] (Danielski) driving towards them. *Id.* They made a complete stop at the stop sign, where Danielski was approaching from the opposite side of the road with his left turn signal on. *Id.* Danielski turned off the turn signal, crossed the intersection, performed a U-turn, and began following behind their car. *Id.* Danielski continued to follow them through several turns. *Id.* at 19-20. This worried Plaintiff and Henson, so they "travel[ed] back around to public eyesight" where the Baum was still parked at the Angola Road and Crissey Road intersection. *Id.* at 20. Baum then "maneuvered in front of" Danielski and turned on his emergency lights. *Id.*

After pulling them over, "the Lucas County Deputies" asked to search the vehicle, but Henson declined consent. *Id.* Plaintiff and Henson asked to be let go and requested a supervisor. One of the Deputies said he was the supervisor. *Id.* All of the deputies "quickly attacked Darnell and [Plaintiff] fast wanting [their] identification and [to] run it in their system." *Id.* Plaintiff and Henson were held for "one hour or longer." *Id.* at 21.

---

5. Based on the other allegations in the Complaint and documents attached thereto, this is Deputy Baum.
6. Based on the other allegations in the Complaint and documents attached thereto, this is Deputy Danielski.

One of the Deputies requested assistance from the Toledo Police Department. *Id.* at 21. Two Toledo Police Officers arrived, including a canine officer. The TPD Officer[7] (Comes) indicated the dog "hit" on the vehicle. *Id.* Plaintiff was scared, "could have passed out," and was "afraid to get medical attention." *Id.* The officers then searched the vehicle and found a plastic bag containing balled up hair. *Id.* They asked Plaintiff and Henson what it was, and they explained Plaintiff attended a hair appointment and took hair to discuss with her stylist. *Id.* No drugs were found during the search. Plaintiff states: "This traffic stop was unlawful there was no crime committed." *Id.*

Plaintiff also attaches to her Complaints one citation the driver received; it cites a violation of Ohio Revised Code § 4513.02 and the offense of "Driving an Unsafe Vehicle". The description states: "This individual stated that he has plans to fix the window. Charge can be dropped if fixes window." *Walker v. Danielski, et al.*, No. 24 CV 2091 (Doc. 1, at 76). Deputy Baum is listed as the charging and issuing law enforcement officer and the citation lists the total number of offenses as "2". *Id.* To their answer, the County Defendants attach a second citation issued to the driver the same date, a violation of Ohio Revised Code § 4511.33, "Driving in Marked Lanes". *Id.*, Doc. 9-1, at 1.[8] It is similarly signed by Deputy Baum and similarly lists two total offenses. *Id.*

To their Answer, the County Defendants also attach Sylvania Municipal Court records indicating the charges against Henson were dismissed without prejudice because the arresting officer did not appear. *Id.* at 4-8.

---

7. Based on the other allegations in the Complaint and documents attached thereto, this is Officer Comes.

8. This Court may take judicial notice of the citation, because that information is in the public record and the fact that the citation was issued is not subject to reasonable dispute. *See Passa v. City of Columbus*, 123 F. App'x 694, 697 (6th Cir. 2005).

Plaintiff also attaches to her Complaints medical records regarding treatment for post-traumatic stress disorder ("PTSD") after the traffic stop. (*Id.*, Doc. 1, at 56-61). She seeks monetary damages against each Defendant.

## STANDARD OF REVIEW

A motion for judgment on the pleadings under Federal Civil Rule 12(c) is reviewed under the same standard as a Rule 12(b)(6) motion. *Coley v. Lucas Cnty.*, 799 F.3d 530, 536-37 (6th Cir. 2015). When considering either a Rule 12(b)(6) or 12(c) motion, this Court presumes all well-pleaded material allegations of the pleadings are true and draws all reasonable inferences in the non-moving party's favor. *Total Benefits Plan. Agency v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

Additionally, this Court recognizes that *pro se* pleadings are held to a less stringent standard than formal pleadings drafted by lawyers. *See El Bey v. Roop*, 530 F.3d 407, 413 (6th Cir. 2008). However, the "lenient treatment generally accorded to pro se litigants has limits." *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). Liberal construction for *pro se* litigants does not "abrogate basic pleading essentials". *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989). The Court is not required to conjure unpleaded facts or construct claims against defendants on behalf of a *pro se* plaintiff. *See Bassett v. Nat'l Coll. Athletic Ass'n*, 528 F.3d 426, 437 (6th Cir. 2008); *Pliler v. Ford*, 542 U.S. 225, 231 (2004) (district courts "have no obligation to act as counsel or paralegal to *pro se* litigants"); *Payne v. Sec'y of Treasury*, 73 F. App'x 836, 837 (6th Cir. 2003) (district courts are not "required to create" a *pro se* litigant's claim for her). Rather, the complaint must give the defendants fair notice of what the plaintiff's claim is and the grounds

upon which it rests. *Lillard v. Shelby Cnty. Bd. of Educ.*, 76 F.3d 716, 724 (6th Cir. 1996). The complaint must still "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Barnett v. Luttrell*, 414 F. App'x 784, 786 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678).

**DISCUSSION**

Operative Complaint

At the outset, although no party directly addresses the issue, given Plaintiff's filing of an Amended Complaint in each case, the Court must determine which complaint is operative.

Federal Civil Rule 15 provides:

(a) Amendments Before Trial.

> (1) Amending as a Matter of Course. A party may amend its pleading once as a matter of course no later than:
>
>> (A) 21 days after serving it, or
>>
>> (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.
>
> (2) Other Amendments. In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.

Fed. R. Civ. P. 15(a).

In the consolidated cases of *Walker v. Danielski, et al.*, No. 24 CV 2091, and *Walker v. Lucas County Sheriff's Department*, No. 24 CV 36, Defendants filed their Motion for Judgment on the Pleadings on February 5, 2025. (Doc. 10). Seven days later, Plaintiff filed her own Motion for Judgment (Doc. 11), and then on March 12, 2025, she filed, without leave of Court, an Amended Complaint (Doc. 14).

8

In *Walker v. Comes, et al.*, No. 25 CV 35, Defendants filed a Motion to Dismiss on January 15, 2025. (Doc. 5). Eight days later, Plaintiff filed an opposition (Doc. 7), and then on March 12, 2025, Plaintiff filed, without leave of court, an Amended Complaint (Doc. 10).

The Court finds neither Amended Complaint properly filed under Rule 15, as neither was filed within the time frame for an amendment as of right nor was Court leave or consent obtained. Moreover, each was filed after Plaintiff had already filed a response to the respective Defendants' dispositive motion. The Court therefore finds the original Complaints, as removed to this Court, are the operative ones for purposes of the present motions.[9]

For the same reasons, having found Plaintiff's Amended Complaint not properly filed, the Court finds Plaintiff's Motion for Entry of Default Judgment (*Walker v. Danielski, et al.*, No. 24 CV 2091, Doc. 17) related to that Amended Complaint not well-taken and denies the motion.

<u>County Defendants</u>

The County Defendants move for judgment on the pleadings in the consolidated cases of *Walker v. Danielski, et al.*, No. 24 CV 2091, and *Walker v. Lucas County Sheriff's Department*, No. 25 CV 36, arguing: (1) the Lucas County Sheriff's Office lacks capacity to be sued under 42 U.S.C. § 1983; (2) alternatively, Plaintiff failed to allege plausible claims against the Lucas County Sheriff's Office; and (3) the Complaint does not state plausible § 1983 claims against the individual Defendants and those Defendants are entitled to qualified immunity. (Doc. 10). Plaintiff responded with a "Motion for Judgment to Plaintiff", in which she contends she is entitled to judgment because she was subjected to an unlawful traffic stop which was prolonged

---

9. In each Amended Complaint, however, it appears Plaintiff attempts to combine all three cases. Indeed, the Amended Complaints filed in both cases are identical and cite both case numbers. The City Defendants filed a Renewed Motion to Dismiss in response to the Amended Complaint. *Walker v. Comes*, No. 25 CV 35 (Doc. 12). The Court notes that even though it finds the Amended Complaints not properly filed, it also finds that even if they were considered, dismissal would still be proper for the same reasons set forth herein.

in violation of *Rodriguez v. United States*, and she was subject to an unreasonable search in violation of her Fourth and Fourteenth Amendment rights. (Doc. 11). The County Defendants oppose / reply. (Doc. 13).

*Lucas County Sheriff's Department*

First, the County Defendants are correct that the Lucas County Sheriff's Department is not *sui juris*, meaning it lacks capacity to be sued. *Petty v. Cnty. of Franklin*, 478 F.3d 341, 347 (6th Cir. 2007) ("[U]nder Ohio law, a county sheriff's office is not a legal entity capable of being sued for purposes of § 1983."), *overruled on other grounds by Twombly*, 550 U.S. at 561-62.

Even assuming the Sheriff's Department were capable of being sued, or liberally construing Plaintiff's Complaints to name the correct governmental entity, dismissal remains proper. Plaintiff contends the "Lucas County Sheriff's Department need[s] to be held accountable for the tort act claim they acted as state actors for their department." (Doc. 11, at 1). Under § 1983, local governments are not liable simply because they employ someone who commits a constitutional violation—that is, they cannot be held liable under a *respondeat superior* theory. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694; *see also Heyerman v. Cnty. of Calhoun*, 680 F.3d 642, 648 (6th Cir. 2012) ("Municipal liability only attaches where a custom, policy, or practice attributable to the municipality was the 'moving force' behind the violation of the plaintiff's constitutional rights.").

10

Plaintiff's Complaints contain no suggestion of a custom or policy of Lucas County which deprived her of a federally protected right. For these reasons, the Lucas County Sheriff's Department is entitled to dismissal of the claims against it.

*Individual Defendants*

To state a cause of action under § 1983, a plaintiff must plead two elements: "(1) deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under color of state law." *Hunt v. Sycamore Cmty. Sch. Dist. Bd. of Educ.*, 542 F.3d 529, 534 (6th Cir. 2008) (citing *McQueen v. Beecher Cmty. Sch.*, 433 F.3d 460, 463 (6th Cir. 2006)). To sufficiently plead the second element, a plaintiff must allege "personal involvement." *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008) (citation omitted). To do so, "a plaintiff must show that the official either actively participated in the alleged unconstitutional conduct or 'implicitly authorized, approved[,] or knowingly acquiesced in the alleged unconstitutional conduct of an offending subordinate.'" *Webb v. United States*, 789 F.3d 647, 659 (6th Cir. 2015) (quoting *Scott v. City of Cleveland*, 555 F. Supp. 2d 890, 896 (N.D. Ohio 2008)); *see also Iqbal*, 556 U.S. at 676 ("a plaintiff must plead that *each* Government-official defendant, through the official's *own individual actions*, has violated the Constitution") (emphasis added). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal even under the liberal construction afforded to *pro se* complaints. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged

violation of rights); *Griffin v. Montgomery*, 2000 WL 1800569, at *2 (6th Cir.) (requiring allegations of personal involvement against each defendant); *Rodriguez v. Jabe*, 1990 WL 82722, at *1 (6th Cir.) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries").

The defense of qualified immunity shields government officials performing discretionary functions where their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This defense "can be raised at various stages of the litigation including at the pleading stage in a motion to dismiss". *English v. Dyke*, 23 F.3d 1086, 1089 (6th Cir. 1994). When a defendant raises qualified immunity, the burden shifts to the plaintiff to show "that the challenged conduct violated a constitutional or statutory right, and that the right was so clearly established at the time of the conduct 'that every reasonable official would have understood that what he was doing violated that right.'" *T.S. v. Doe*, 742 F.3d 632, 635 (6th Cir. 2014) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)) (citation modified).

The Fourth Amendment's protection against unreasonable searches and seizures, made applicable to the states through the Fourteenth Amendment, protects individuals from: (1) traffic stops when the officer lacks probable cause to believe that a civil infraction occurred or reasonable suspicion that a crime is being committed; and (2) arrests or detentions without probable cause. *See Bazzi v. City of Dearborn*, 658 F.3d 598, 603 (6th Cir. 2011) ("[A] vehicle stop by a police officer is a 'seizure' within the meaning of the Fourth Amendment.") (citation modified). In the traffic stop context, the probable cause determination "is fact-dependent and

will turn on what the officer knew *at the time he made the stop*." *United States v. Ferguson*, 8 F.3d 385, 391 (6th Cir. 1993).

"Generally, a dog sniff does not require separate reasonable suspicion because it is not a search under the Fourth Amendment. If a dog sniff is conducted while someone is otherwise properly seized, such as in a lawful traffic stop, the dog sniff may render an otherwise lawful seizure unlawful only if it unreasonably prolongs the initial stop and the officer lacked an independent reasonable suspicion to extend the stop." *United States v. Stepp*, 680 F.3d 651, 663 (6th Cir. 2012) (citing *Illinois v. Caballes*, 543 U.S. 405, 409 (2005)). In *Rodriguez v. United States* (the case upon which Plaintiff relies), the Supreme Court held that officers may not prolong a traffic stop to have a drug dog sniff a car—a crime detecting action not ordinarily incident to a traffic stop—absent independent reasonable suspicion to detain the motorist. 575 U.S. 348, 354-57 (2015). Finally, "[a]n alert to the presence of drugs by a properly trained narcotics detection dog is sufficient to establish probable cause to search a vehicle." *United States v. Sharp*, 689 F.3d 616,  618 (6th Cir. 2012); *Nykoriak v. Wileczek*, 666 F. App'x 441, 445 (6th Cir. 2016) ("[T]he positive indication by the canine was sufficient to establish probable cause for the presence of a controlled substance to justify the warrantless search of [the] vehicle.") (internal quotations and citations omitted).

**Baum**

As noted above, in the context of a traffic stop, the probable cause determination turns on "what the officer knew *at the time he made the stop*." *Ferguson*, 8 F.3d at 391. Plaintiff's Complaint alleges Baum told Henson he was pulled over for a marked lane violation, but Henson denied committing such a violation. The County Defendants rely on the fact that Henson was also cited for driving with a cracked windshield and that he acknowledged the violation,

13

contending this provides a constitutional basis for the stop. The fact that Henson was cited is accurate. However, it does not show that Baum knew about the cracked windshield prior to making the stop. That is, the Complaint at least plausibly alleges that Baum lacked probable cause to pull the car over. This claim may proceed to the discovery phase.

The Court also finds at this juncture that Plaintiff has plausibly alleged Baum unreasonably prolonged the stop to bring in the Toledo Police Officer (Comes) and the canine. The Complaint alleges, as to Baum: "This Deputy held us detained [until] Toledo Police & their K-9 officer came." *Walker v. Danielski, et al.*, No. 24 CV 2091 (Doc. 1, at 68). It further alleges Plaintiff was held for "one hour or longer." *Id.* at 53.

Although County Defendants argue "the facts—i.e., the reasonable suspicion for—justifying that extension [of the traffic stop] are contained in the Exhibits now before the Court" (Doc. 13, at 7), the Court finds the material Defendants reference not appropriate for consideration at this stage. Defendants ask the Court to consider exhibits attached to their answer, including a statement from an Internal Affairs Bureau response to a complaint that states: "After the stop[,] Mr. He[n]son's driving pattern, criminal history and acting suspicious were reasons given for calling the Toledo Police K9 unit." (Doc. 9-1, at 10). But Defendants' argument asks the Court to take this statement as established fact. Defendants contend the Court can consider these documents because they are attached to the pleadings and because they are matters of public record. Generally, in evaluating a Rule 12(c) motion, like a Rule 12(b)(6) motion, the Court cannot consider evidence outside the pleadings. *See Hammond v. Baldwin*, 866 F.2d 172, 175 (6th Cir. 1989). A court may, however, consider exhibits attached to the complaint, public records, and exhibits attached to the motion to dismiss if they are referred to in the complaint and central to the plaintiff's claims. *Rondigo, L.L.C. v. Twp. of Richmond*, 641

F.3d 673, 680-81 (6th Cir. 2011). "[I]n general, a court may only take judicial notice of a public record whose existence or contents prove facts whose accuracy cannot reasonably be questioned." *Passa v. City of Columbus*, 123 F. App'x 694, 697 (6th Cir. 2005).

Because Plaintiff could reasonably question the accuracy of the contents of the Internal Bureau Affairs complaint response, and because it is not central to Plaintiff's complaint, the Court finds consideration of such documents better suited for a summary judgment motion. *Cf., e.g.*, *Linden v. City of Lansing*, 2013 WL 6858459, at *3 (W.D. Mich.) ("Most courts that have considered the issue have determined that police reports may not be considered as public records") (citing *Blackwell v. Kalinowski*, 2009 WL 1702992, at *2 (N.D. Ill.) ("[T]he factual allegations contained in the police report do not become matters of public record suitable for consideration on a motion to dismiss.")).

Whether a dog sniff unreasonably prolonged a traffic stop "is the type of circumstance-specific Fourth Amendment inquiry that, in the civil context, is generally reserved to the jury[.]" *Hernandez v. Boles*, 949 F.3d 251, 257 (6th Cir. 2020); *see also United States v. Baxter*, 2018 WL 1598950, at *6 (E.D. Tenn.) ("To evaluate the reasonableness of a stop, a court considers the diligence of the officer. A court must conduct a fact-bound, context-dependent inquiry in each case to determine whether the totality of the circumstances surrounding the stop indicates that the duration of the stop as a whole . . . was reasonable." (quotation marks and citations omitted)), *report and recommendation adopted*, 2018 WL 1594778; *Davila v. N. Reg'l Joint Police Bd.*, 2016 WL 1252986, at *3 (W.D. Pa.) ("While it may indeed turn out, with the benefit of discovery, that [the officer] had probable cause or at least a reasonable basis to suspect [plaintiff] had violated some law other than that requiring her headlights to be on, the Court concludes that at this juncture, it is just too soon to tell as a factual matter.").

Here, Plaintiff has alleged sufficient facts in her complaint to proceed to discovery regarding what information Baum knew and/or acted upon. Discovery will also reveal whether, as the County Defendants assert, Baum had reasonable suspicion to extend the traffic stop if it was so extended. The Court therefore finds Plaintiff's claim that Baum unreasonably prolonged the traffic stop may proceed.

By contrast, the Court finds Plaintiff has not plausibly alleged that the search of the car itself violated her rights. As the County Defendants correctly contend, a drug dog's alert establishes probable cause for a search. *See Sharp*, 689 F.3d at 618; *Nykoriak*, 666 F. App'x at 445. And Plaintiff provides no argument in opposition. Although Plaintiff's Complaints assert the dog alerted incorrectly (because no drugs were ultimately found in the car), she pleads that the dog alerted. Thus, under the facts as asserted in the Complaint, officers had probable cause for the search.

### Danielski

As to Danielski, Plaintiff's Complaint identifies him as a supervisor and describes how he followed the car in which Plaintiff was a passenger before Baum pulled it over. *Walker v. Danielski, et al.*, No. 24 CV 2091 (Doc. 1, at 9). Elsewhere in Plaintiff's narrative description of the events, Plaintiff asserts that she and Henson "ke[pt] asking to be let go" and when she "asked for a supervisor, he said he is the supervisor." *Id.* at 52. Although Plaintiff does not identify specifically who "he" is, in context and with Danielski identified as the supervisor elsewhere, the Court liberally construes this to allege Danielski participated in the traffic stop detention. Plaintiff's Complaint contains no further specific factual allegations as to actions taken by Danielski.

16

Although a close call, the Court finds that the Complaint plausibly alleges Danielski's personal involvement in both the traffic stop and the subsequent decision to call in the Toledo Police Department officer and canine. *See, e.g.*, *Webb*, 789 F.3d at 659 (stating that to allege personal involvement, "a plaintiff must allege the official either actively participated in the alleged unconstitutional conduct or implicitly authorized, approved[,] or knowingly acquiesced in the alleged unconstitutional conduct of an offending subordinate."). Plaintiff's claims against Danielski may proceed.

### Navarre / McClellan

As to Navarre, the Complaint simply alleges that he "violated [Plaintiff's] 4th and 14th Amendment rights." *Walker v. Danielski, et al.*, No. 24 CV 2091 (N.D. Ohio) (Doc. 1, at 41). As to McClellan, Plaintiff simply asserts he "participate[d] in an illegal stop and search & . . . made me sit on his road bar[.]" *Id.* at 95. There are no other specific factual allegations as to either of these Defendants.

The pleading standard requires more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading that offers legal conclusions or a simple recitation of the elements of a cause of action will not meet this pleading standard. *Id.* In contrast to the claims against Danielski, which the Court finds just barely pass the plausibility standard, the Court finds Plaintiff has not plausibly pled a § 1983 claim against either Navarre or McClellan and they are entitled to dismissal. *Id.* at 676 ("a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution"); *Frazier*, 41 F. App'x at 764 (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights).

In sum, as to the Lucas County Defendants, the Court finds that Plaintiff has plausibly alleged claims against Danielski and Baum, but her claims against Navarre, McClellan, and the Lucas County Sheriff's Department must be dismissed.

<u>City of Toledo Defendants</u>

The City of Toledo Defendants also move to dismiss the claims asserted in *Walker v. Comes, et al.*, No. 25 CV 35. (Doc. 5). Following the filing of Plaintiff's Amended Complaint, these Defendants renewed their motion. (Doc. 12). Specifically, they argue: (1) the claims against Sergeant Comes fail to raise an inference of plausibility, or alternatively he is entitled to qualified immunity; (2) the claims against the canine officer must be dismissed as a police dog may not be sued under § 1983; and (3) Plaintiff fails to state a claim against the Toledo Police Department as it is not an entity subject to suit, and even if it were, Plaintiff has not identified facts plausibly suggesting liability. Plaintiff opposes, alleging that "the unlawful traffic stop was prolonged to involve Sgt. Don Comes and K-9 officer" and that Comes "conduct[ed] a[n] unlawful dog sniff around the outside of the vehicle[.]" (Doc. 7).

*Toledo Police Department*

As discussed above in relation to the Lucas County Sheriff's Department, the Toledo Police Department is similarly not an entity capable of being sued. *See Lawson v. City of Youngstown*, 912 F. Supp. 2d 527, 531 (N.D. Ohio 2012) (collecting cases and holding that Ohio courts and police departments are not *sui juris* for purposes of suit under § 1983); *see also Tysinger v. Police Dep't of Zanesville*, 463 F.3d 569, 572 (6th Cir. 2006) ("We note at the outset that the named defendant in this action, the Police Department of the City of Zanesville, is not a juridical entity subject to suit under Ohio law.").

18

And, as with the Lucas County Sheriff's Department, even if the Complaint were liberally construed to identify the correct municipal entity, it does not identify a policy, custom, or practice that was the moving force behind the alleged deprivation of Plaintiff's rights. As such, the Toledo Police Department is entitled to dismissal.

*Canine Officer*

In opposition to the City Defendants' motion, Plaintiff contends "[t]he K-9 officer and it[]s handler Sgt. Don Comes communicated and one (1)-or-both made a false statement that drugs were inside the vehicle (the K-9 officer was excessive force. [I]t was not necessary for it to be present)[.]" (Doc. 7, at 1). But the Court finds Defendants correctly assert the dog is not a "person" subject to suit under 42 U.S.C. § 1983. *See Hicks v. City of Barberton*, 2011 WL 3022089, at *3 (N.D. Ohio) ("[Plaintiff] cannot bring a civil rights action against the police dog. . . . A dog is not a 'person' for purposes of § 1983 litigation.") (collecting cases); *see also Dye v. Wango*, 253 F.3d 296, 300 (7th Cir. 2001) (holding a police dog is not a suable "person"). As such, the canine officer is entitled to dismissal.

*Sergeant Comes*

Finally, the City Defendants move to dismiss Plaintiff's claims against Sergeant Comes. The specific allegations against Comes in the Complaint are simply that Comes arrived at the request of Lucas County Deputies and performed a dog sniff of the vehicle. *See Walker v. Comes*, No. 25 CV 35 (N.D. Ohio) (Doc. 1-3, at 2) ("the illegal stop was detained longer for the Sgt. to bring the Toledo Police K-9 officer to illegal[ly] search the vehicle"); (Doc. 10, at 1) (stating that Lucas County Deputies "prolonged the traffic stop for a long period of time to bring a drug sniffing K-9 officer from Toledo Police Department and it[s] handler Sgt. Don Comes to come (Rodriguez v. United States) out Toledo Police jurisdiction to violate the Plaintiff['s]

Fourth and Fourteen[th] [A]mendment[.]"); Doc. 1-3, at 14 ("Lucas County Deputy sheriff requested assistance from Toledo Police Department[.] John Does 1-2 officers came and assisted Lucas County sheriffs asking Darnell and I to step out of the vehicle[.] [O]ne of the Toledo police John doe was a K-9 officer."). In her opposition to the City Defendants' motion, Plaintiff contends Comes performed "an unlawful sniff around the vehicle" that took part "out of Toledo Police Department jurisdiction." (Doc. 7, at 1).

That is, the only factual allegations against Sergeant Comes are that (1) his dog performed an "unlawful sniff" of the car in which Plaintiff was a passenger; and (2) he acted outside of his jurisdiction. As Defendants point out, "Sgt. Comes is not alleged to have either conducted the stop, or prolonged it." (Doc. 12, at 4).

As to Plaintiff's first contention that Comes violated her constitutional rights, the Court reiterates that "a canine sniff is not a search within the meaning of the Fourth Amendment[.]" *United States v. Reed*, 141 F.3d 644, 650 (6th Cir. 1998); *Stepp*, 680 F.3d at 663 (holding a dog sniff is not a search). Thus, to the extent Plaintiff contends Comes violated her rights by means of conducting the canine sniff alone, she is incorrect.

Plaintiff's argument in opposition focuses on the extension of the stop to bring Comes and the dog to the location and that Comes acted outside his jurisdiction. As to the first argument, she cites *Rodriguez*, 575 U.S. at 354. *See* Doc. 7, at 1. As noted above, *Rodriguez* stands for the proposition that police may not extend an otherwise-completed traffic stop, absent reasonable suspicion, in order to conduct a dog sniff. 575 U.S. at 354-57. But the Complaint contains no factual allegations plausibly alleging Comes took any action that unreasonably prolonged the stop; instead it simply alleges Comes arrived and performed the dog sniff. Rather, all of Plaintiff's allegations place responsibility for the alleged prolonging of the stop on the

County Defendants who initiated the stop. As such, the Court finds Plaintiff has not plausibly pled a clearly established § 1983 claim against Comes. *Cf. Lea v. Conrad*, 2022 WL 4279728, at *7 (W.D. Ky.) (finding, albeit at the summary judgment stage, that the plaintiff "ha[d] not pointed to evidence in the record that [the officer], arriving to the scene after the stop in a support role as a K9 handler, reasonably knew that he was extending the traffic stop beyond a constitutionally permissible length. [The officer] is therefore entitled to qualified immunity.").

Further, to the extent Plaintiff asserts Comes acted outside of his territorial jurisdiction, the Court agrees with the City Defendants that Comes is entitled to qualified immunity. Even assuming Comes acted outside his territorial jurisdiction, he violated no clearly established constitutional right in doing so. As the City Defendants point out, the Ohio Supreme Court has held that a law enforcement officer who observes a traffic violation outside his jurisdiction has probable cause to make a traffic stop and such a stop does not violate the Fourth Amendment. *State v. Jones*, 121 Ohio St. 3d 103, 106-09 (2009). And various courts have explained that even if a traffic stop violates state law, that does not mean it violates the federal constitution. *See, e.g.*, *Virginia v. Moore*, 553 U.S. 164, 172 (2008) (noting that while local law enforcement practices might "vary from place to place and from time to time, Fourth Amendment protections are not so variable[.]") (internal quotation and citation omitted); *Leonard v. City of Nelsonville*, 2020 WL 3429464, at *3 (6th Cir.) ("[L]inking Fourth Amendment protections to state law would cause them to 'vary from place to place and from time to time.'" (quoting *Moore*, 553 U.S. at 176)). Plaintiff has pointed to no clearly established law holding otherwise. As such, the Court finds Sergeant Comes is entitled to dismissal of any claim based on allegations he was acting outside his territorial jurisdiction.

The Court therefore finds all city of Toledo Defendants are entitled to dismissal of Plaintiff's claims.

CONCLUSION

For the foregoing reasons, good cause appearing, it is

ORDERED that the County Defendants' Motion for Judgment on the Pleadings in *Walker v. Danielski, et al.*, No. 24 CV 2091 (N.D. Ohio) (consolidated with *Walker v. Lucas County Sheriff's Department*, No. 25 CV 36 (N.D. Ohio)) (Doc. 10) be, and the same hereby is, GRANTED IN PART and DENIED in part. Specifically, Plaintiff's Fourth and Fourteenth Amendment claims against Baum and Danielski regarding the lack of probable cause and prolonging of the traffic stop may proceed; all other claims asserted against the County Defendants are dismissed; and it is

FURTHER ORDERED that Plaintiff's Motion for Judgment (Doc. 11) be, and the same hereby is, DENIED; and it is

FURTHER ORDERED that the City of Toledo Defendants' Motion to Dismiss (Doc. 5) and Renewed Motion to Dismiss (Doc. 12) in *Walker v. Comes, et al.*, No. 25 CV 35 (N.D. Ohio), be and the same hereby are, GRANTED; and it is

FURTHER ORDERED that Plaintiff's Motion for Entry of Default Judgment (Doc. 17) in *Walker v. Danielski, et al.*, No. 24 CV 2091 (N.D. Ohio) be, and the same hereby is, DENIED; and the Court

FURTHER CERTIFIES, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.

 s/ *James R. Knepp II*
UNITED STATES DISTRICT JUDGE

Dated: July 17, 2025